**Carl PERKINS and Russell Bolln, Appellants,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Dec. 9, 1966.

———◇———

Marcus Mann, Salyersville, for appellants.

Robert Matthews, Atty. Gen., David Murrell, Asst. Atty. Gen., for appellee.

MILLIKEN, Judge.

Russell Bolin, aged 29, and Carl Perkins, aged 19, are first cousins and were convicted of grand larceny and sentenced to three years in the penitentiary. The charge stemmed out of their alleged theft of Anthony Beculheimer's power saw which weighs about 15 pounds and is 2½ feet long.

Bolin and Perkins had spent the night with Bolin's father. The next day, the day the saw was stolen, they walked eight miles to Perkins' home, passing Beculheimer's house on the way. Neighbors in the vicinity testified that they saw Bolin and Perkins walking toward Perkins' home. Perkins was about 200 yards behind Bolin and was carrying an object which was covered with a coat, sack or other type of covering. One witness, who saw them from a distance of 200 yards, said he thought it was the shape of a guitar. That witness' wife, who observed them from the same distance, testified, over objection, that she thought it was a power saw because of its size and shape. A third witness, who was within 25 feet of Bolin and Perkins, would not attempt to guess what it was because it was

covered. Bolin and Perkins testified that it was a coffee sack filled with Bolin's clothes. Perkins' father testified the boys had a coffee sack of clothes when they arrived at his home. He saw no power saw. Beculheimer drove a school bus and his schedule was generally known. He had seen Bolin near the witness' home the day the saw was stolen from his front porch, but did not know whether Bolin was familiar with his bus schedule.

Bolin was arrested while at Perkins' home, but Perkins wasn't there at the time. Perkins testified he purchased the saw for $12 from Henry Perkins and, after learning of Bolin's arrest, he and his brother-in-law took the saw to the sheriff. He said he borrowed the money from his father and brother-in-law, $8 from one and $4 from the other, and was corroborated in this by the two lenders. Henry Perkins was not available as a witness at the trial.

There was no direct evidence as to the present value of the saw. Beculheimer said he paid $169 for it about a year before and had used it only occasionally. The saw which was turned over to the sheriff by Carl Perkins and his brother-in-law was identified by its serial number as Beculheimer's saw. It was an exhibit at the trial and no evidence was offered by the defense to question the value of the saw. The theft of an article a $100 or more in value is punishable by one to five years in the pentitentiary (KRS 433.220), while the theft of articles under $100 in value is punishable by one to twelve months' imprisonment or by fine of $50 to $500 (KRS 433.-220). The appellants insist that they were entitled to an instruction on petit larceny under KRS 433.230 which was not given.

It is true that the only evidence as to the value of the saw at the time it was taken was its $169 purchase price a year before and its apparent condition when displayed as an exhibit to the jury. The owner testified that it had been used very little and that it still had its original chain. In its instructions, the trial court informed the jury in effect that the saw had to be worth $100 or more for them to find the appellants guilty of the charge of grand larceny. The evidence as to value—the purchase price and the condition of the saw—was all the jury had to go on. It is said in 52 C.J.S. Larceny § 118, at pages 941 and 942:

"* * * Where it does not appear that there is any absolute standard by which the market value may be determined with definiteness and certainty, any facts which reasonably tend to show the present value of the stolen property may be admitted. Thus it has been held that evidence of the purchase price and the condition of the property when stolen is admissible, especially when the property has been used but a short while."

See Beasley v. Commonwealth, Ky., 339 S.W.2d 179 (1960).

The Commonwealth had the duty to establish the market value at the time and place of the theft and, in the case at bar, it offered no evidence other than that mentioned. We believe that the jury could have reasonably concluded from that evidence that the market value was over $100. Juries as a rule would not have common knowledge of the value of such a saw, but the condition of the saw and its unquestioned purchase price just a year before formed an adequate basis for concluding that it was worth at least $100 at the time of the theft. We do not find the factual situation here comparable to that in Smith v. Commonwealth, 284 Ky. 169, 144 S.W.2d 215 (1939), where the value of the stolen property was so near "the dividing line between grand and petit larceny that the jury might reasonably infer that the value was less than" the minimum amount needed to convict for grand larceny, so that an instruction on petit larceny was required. And we feel the same way about Taylor v. Commonwealth, 240 Ky. 286, 42 S.W.2d 309 (1931), where the value of a hen and nine little chicks was so vague and unsatisfactory as to make it most uncertain as to

whether grand or petit larceny was involved in their theft. In Davis v. Commonwealth, 191 Ky. 242, 229 S.W. 1029 (1921), this Court held it was not error to fail to instruct on petit larceny where the evidence as to value was uncontradicted and clearly was an amount to authorize a conviction for grand larceny. We think the evidence of value here was sufficient to establish the amount necessary to support a charge of grand larceny.

Complaint is made about the testimony of the witness who said the wrapped object carried by Perkins "looked like a power saw." The jury was admonished. The appellants contend the analogy was an invasion of the province of the jury and as a consequence the jury should have been discharged. It is argued that if the jury did not believe Perkins was carrying the saw at the time, it could not have found Bolin guilty because that is the only evidence connecting Bolin directly with the saw. One witness said the wrapped object carried by Perkins resembled a guitar. These analogies—guitar and saw—merely reflected the shape of the covered object; they did not identify it as a guitar or a power saw, but did suggest that the wrapped object could have been either. We do not believe that such descriptions were an invasion of the province of the jury; rather they were examples of an everyday, normal way of communicating through the spoken word.

The evidence as to Perkins' part in the theft is sufficient to support his conviction. He is identified as the carrier of the covered object and he it was who returned the stolen saw to the sheriff. It is contended that nothing connects Bolin with the crime, if the saw was stolen at the time alleged except his traveling with Perkins before and after the theft, when Perkins overtook him on their way to the home of Charley Perkins. The instructions did not cover conspiracy to steal, but were given separately as to each man and covered the charge of grand larceny for which

the men had been jointly charged. It is true, of course, that mere association, though it may create a suspicion, is not enough to prove criminal concert. The most that we have to connect Bolin with the theft of the saw is his being seen with Perkins before and after the saw was stolen, and being seen with Perkins while he (Perkins) was carrying the covered object. The alibi that the package contained Bolin's clothes and that Perkins and he took turns carrying it obviously was not believed by the jury and may even have been construed by the jury as indicating Bolin had a guilty mind. We have a bit more than a mere association here between Bolin and Perkins; we have an established theft of the saw at a time when Bolin and Perkins were together. We conclude that the jury was entitled to weigh all these circumstances and to decide from them that Bolin was a participant in the theft.

The judgment is affirmed.